## In re Anonymous No. 45 D.B. 75

Disciplinary Board Docket no. 45 D.B. 75.

HARRINGTON, *Board Member,* July 18, 1977 —Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

At the above number, a petition for discipline was filed by the office of disciplinary counsel naming

[ ] as respondent therein. The matter was assigned to hearing committee [ ] consisting of [ ] chairman, and [ ] and [ ], members. Hearings before the committee were scheduled and held on March 30, 1976, April 22, 1976, and May 11, 1976, at the Office of the Disciplinary Board, [ ], Pennsylvania. At all times, petitioner was represented by [ ], Esquire, and [ ], Esquire appeared for respondent. A substantial amount of oral testimony was taken and a large number of stipulations were entered into and approved by the hearing committee. The matter ultimately resolved itself into two charges referred to hereinafter as Charge 1—[A] and Charge 2—[B] Estate.

The testimony before the hearing committee was closed in January, 1977, when the final stipulation of counsel was filed. On April 4, 1977, the report of the hearing committee was filed and included the conclusion that respondent had violated the following Disciplinary Rules as they related to:

### Charge 1—[A]

D.R. 6-101(A)(3)—Neglect of legal matter entrusted to him.

D.R. 7-101(A)(2)—Failure to carry out a contract of employment.

D.R. 7-101(A)(3)—Prejudice or damage to the client.

D.R. 9-102(B)(1)—Promptly notifying client of receipt of funds.

D.R. 9-102(B)(4)—Relative to prompt payment upon receipt of client's funds.

D.R. 1-102(A)(4)—Conduct involving dishonesty, fraud, deceit and misrepresentation.

### Charge 2—[B] Estate

D.R. 6-101(A)(3)—Neglect of a legal matter entrusted to him.

D.R. 7-101(A)(2)—Failure to carry out the contract of employment with the client.

D.R. 7-101(A)(1)—Failing to seek the lawful objectives of his client.

Also included in the hearing committee's report was the recommendation as follows: "We specifically find that Respondent Attorney is guilty of violating the Disciplinary Rules that we have set forth above in the Discussion, and we recommend that Respondent be disciplined by a public censure by the Supreme Court without probation."

No objections were filed to the hearing committee report or recommendations within the prescribed time.

The board adopts the findings, conclusions and recommendation of the hearing committee that respondent be disciplined by public censure by the Supreme Court of Pennsylvania.

## II.  FINDINGS

### Charge 1—[A]

Respondent was retained by [A's] to represent them in a claim for personal injuries sustained by them as a result of a motor vehicle accident. The sequence of some of the events leading up to the filing of the complaint against respondent was as follows:

December 29, 1969—[A's] were involved in an accident with a motor vehicle insured by Etna Insurance Company.

January 23, 1970—[A's] executed a power of attorney in favor of respondent providing for a contingent fee.

January 23, 1970 to December 7, 1971—There were communications between the [A's] and re-

spondent by way of letters, telephone calls and personal meetings.

December 7, 1971—Etna Insurance Company adjuster sent a letter to respondent making an offer of settlement and enclosing settlement checks made payable to the [A's] and to respondent as their attorney. Apparently the offer was made and the checks forwarded without any prior commitment by respondent or the [A's] to accept the settlement offer.

December 29, 1971—Statute of limitations expired.

January 4, 1972—Suit was filed in the United States District Court for the [ ] District of Pennsylvania at Civil Action 72-37. This suit was dismissed by order of court October 24, 1972.

September 29, 1972—For the first time respondent told his clients that their claim was barred by the statute of limitations and that Etna Insurance Company had offered to settle all claims for a total of $7,000. Respondent at that time informed his clients that he had been negligent in handling their matter and advised them of their right to seek counsel to advise them in any claim they may have against respondent. The [A's] endorsed the check and agreed to accept the settlement with the understanding that respondent would receive no fee.

October 3, 1972—[A's] reneged on the settlement agreement and thereafter retained counsel to represent them in a claim against respondent.

October 3, 1972 to May 21, 1974—Negotiations between respondent and counsel for the [A's] to attempt to work out terms by which the [A's] would release respondent from liability to them for his own negligence in the handling of their personal injury claim.

May 21, 1974—Settlement between respondent and the [A's] was finally concluded.

July 2, 1975—This petition for discipline was filed.

Respondent readily admits that he has violated the Disciplinary Rules previously cited in this report as those rules apply to his conduct in handling the [A] matter. He allowed the statute of limitations to run before filing suit on behalf of his clients. For that respondent has offered no explanation nor does there appear to be any explanation to be offered under these circumstances. With or without his admission, he has certainly violated the applicable disciplinary rules.

The checks mailed by Etna Insurance Company to respondent whether solicited or not should have been returned to Etna or properly endorsed and negotiated with disbursement to the [A's] in accordance with their agreement with respondent. Again, there is no acceptable explanation in the record nor could there be why respondent held the checks for approximately ten months before even notifying his clients. The checks were certainly of no benefit to respondent but to the contrary they must have been a repeated and unpleasant reminder of his responsibility to do something about the case.

This is not a situation where the attorney appropriated the funds of his client to his own use. The amounts represented by the Etna Insurance Company checks added nothing to respondent's bank account. They remained but paper in the [A] file until endorsed by them on the occasion of their meeting with respondent in his office on September 29, 1972. Some small part of that meeting is discussed by [A] in her testimony before the hearing committee.

"And he said, 'Well, I missed the statute of limitations, but I have two checks totaling $7,000.'

"I said, you have two checks! You never told us.

"I said, how long have you got them?

"He said, 'Since December.' I said, well, they're no good . . .

"He says, 'Well, you can sign the checks, I won't take a fee, and, I'm sorry, he said, and I'll turn it over to you,' So I said to my husband, let's sign the checks." . . .

"He told us that we could see another attorney or we could sue him for malpractice, but he doesn't have malpractice insurance. . . . I said to my husband, please, let's sign the checks, we got to get out of here." . . .

". . . and he called me on Thursday that he has to see my husband and me. By that time, we had already spoken to another attorney on his advice. He said we could contact another attorney."

Thereafter for the next approximately 18 months, [A's] counsel and respondent negotiated in an effort to arrive at some settlement of all claims by the [A's] against respondent. They were finally successful in May of 1974 when the sum of $9,250 was transferred to the [A's] by counsel for respondent.

### Charge 2—[B] Estate

On February 4, 1971, [B] died testate. Shortly thereafter, [C] was granted letters of administration and became administrator c.t.a. of the estate of [B]. [C] thereafter engaged respondent as legal counsel to act for him in the administration of the estate. By December, 1971, [C] had liquidated the assets of the estate in preparation of the payment of all debts owed by the estate and for final distribution of the estate. In connection with management of the estate, [C] prepared and delivered to respond-

ent a total of sixteen checks drawn upon the estate account for payment of the debts of the estate. The checks were delivered to respondent by May 10, 1972. Thereafter, [C] met with respondent to discuss reasons for delay in closing the estate. In addition to personal meetings with respondent, [C] called respondent's office on the telephone to demand an explanation for respondent's failure to conclude the estate. [C] received no satisfactory explanation and thereafter, he filed a complaint with the Disciplinary Board. Even after the complaint had been filed, respondent failed to conclude the legal work necessary to close the estate. [C] discharged respondent as counsel for the estate. In January, 1974, respondent turned over estate papers in full to [D], Esquire, who assumed the responsibility for completing the legal work and settlement of the estate. Respondent further delivered to [D] his check for $500 representing full and complete refund of the total fee that respondent had received.

Again, in Charge 2 as in Charge 1, respondent offers no explanation for his failure to conclude a legal matter that apparently was not complicated.

"The legal work involved in completing the estate was not extensive or complicated: the total assets of the estate were only slightly in excess of $10,000; there was no will contest or other legal action against the estate and the distribution could have been easily accomplished by a receipt and release procedure." (Petition for Discipline, paragraph 62.)

By filing stipulation entitled Third Supplemental Stipulation, respondent has admitted violation of the Disciplinary Rules cited above.

Again, respondent is not accused of nor is there any basis for an accusation that he appropriated the

estate funds for his own use during the time that closing of the estate was delayed. Respondent received no benefit from the delay.

## RECOMMENDATION

The board agrees with the hearing committee that respondent conducted himself in a highly unprofessional and unethical manner. This conduct demands public discipline. Respondent's conduct in both of the cases discussed herein resulted in substantial inconvenience to his clients with no benefit to himself. The board recommends to your honorable court that respondent be administered public censure by the Supreme Court of Pennsylvania.

## ORDER

EAGEN, *C.J.*,—And now, August 9, 1977, the report and recommendations of the Disciplinary Board dated July 18, 1977, are approved and it is ordered and decreed, that said respondent, Esquire, be subjected to public censure by the Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing October 17, 1977, at Philadelphia.